## VON HAUGER *v.* STATE OF INDIANA.

[No. 1068S173. Filed October 9, 1969. No petition for rehearing filed.]

*Palmer K. Ward,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, for appellee.

GIVAN, J.—The appellant was convicted by the Marion Criminal Court, Division One, without the intervention of a jury on an indictment charging him with the violation of the Offenses Against Property Act, being Section 10-3030 of Burns' Indiana Statutes Annotated. His sole assignment of error is the overruling of his motion for new trial. The grounds stated in said motion read as follows:

"1. The Court erred in admitting into evidence State's Exhibits numbered 1, 2, 3, 4, 5, 6, 7 and 8.

"2. The finding of the Court is not sustained by sufficient evidence.

"3. The finding of the Court is contrary to law."

The evidence most favorable to the state discloses that the appellant, together with a Mrs. Margaret Dillon, entered the H. P. Wasson and Company store located in the Eagledale Shopping Center in the City of Indianapolis on the 22nd day of November, 1966. Upon entering the store the appellant and Mrs. Dillon were observed by one Robert Munshower,

who is a Lieutenant in the Burglary and Larceny Division of the Indianapolis Police Department and was working in his off-duty time as a protection officer for H. P. Wasson and Company. He testified that he knew the appellant, but that he had never seen him in the store before. He, therefore, observed the appellant and Mrs. Dillon while they were in the store.

They first went to the cosmetic department where Mrs. Dillon made a purchase using a credit card issued to a Mrs. Ermal P. Gray. Exhibit 1 is the charge slip for this particular transaction.

The appellant and Mrs. Dillon next went to the shoe department where the appellant himself chose some shoes which were obtained from the store by the use of the same credit card. Exhibit 2 is the charge slip for this transaction.

They next went to the men's wear department where the appellant chose two suits and some slacks. Again these articles were obtained by use of the same credit card. The suits were not left for alteration, but were immediately removed from the premises by the appellant and Mrs. Dillon. The charge slip for this transaction is Exhibits 3. Exhibits 4 and 5 were the suits which were removed.

The suits were identified by witness Harry Huntsman, who testified that he worked in the men's department; that he waited on the appellant at the time in question and that he could identify the suits by identification numbers in the coats, which he showed to the Court.

The appellant and Mrs. Dillon next went to the glove department where the appellant chose some gloves which were again obtained by use of the credit card. The charge slip for this transaction is Exhibit 6.

Mrs. Ermal P. Gray testified that State's Exhibit 7 was her billfold, which she did not have in her possession on November 22, 1966, and that State's Exhibit 8 is her charga-

plate with her signature on it. She further testified that she did not know Mrs. Dillon nor the appellant, and that she did not give either of them the charga-plate in question, nor did she give them permission to use it.

It is appellant's contention that the foregoing evidence does not sufficiently connect the appellant with the alleged transactions in that it was Mrs. Dillon who each time presented the charga-plate. It was she who each time signed the charge slip as Mrs. Ermal P. Gray. However, it is very clear from the evidence that the appellant and Mrs. Dillon were together in the store and that it was the appellant who picked out the gloves and the men's clothing as his own choice. On at least one occasion in the store during these transactions the appellant falsely represented to the clerk that Mrs. Dillon was his wife, and that she was going to purchase the men's clothing for him. This false representation in itself is evidence upon which the Court could reasonably believe that the appellant knew that Mrs. Dillon was using a charga-plate which she well knew she was not authorized to use, and that he was acting in concert with her in the obtaining of the various articles of merchandise by the use of the charga-plate. The making of false statements and related conduct concerning the activities in question are admissible as evidence of guilt. *State v. Torphy* (1940), 217 Ind. 383, 28 N. E. 2d 70.

The suits were later recovered by Indianapolis police officers hanging in a closet in appellant's home. This is further evidence upon which the Court could base its decision that the appellant fully intended to exercise personal control over the items obtained.

It was within the province of the Court to consider all of the foregoing facts, such as the appellant's presence during the transactions, his companionship with Mrs. Dillon at the time, his conduct in choosing certain articles and his subsequent possession of those articles as evi-

dence of his guilt. *Cotton v. State* (1965), 247 Ind. 56, 6 Ind. Dec. 699, 211 N. E. 2nd 158.

The appellant also claims there was no probative evidence in the record to prove that H. P. Wasson and Company was a corporation organized and existing under the laws of the State of Indiana. It is true that State's Exhibit 9, the same being a Certificate of Incorporation of H. P. Wasson and Company, was ruled inadmissible by the Court. However, a witness for the State, one Leonard Hall, testified that he was Credit Manager of H. P. Wasson and Company, and that it was a corporation authorized to do business under the laws of Indiana on November 22, 1966. This in itself is sufficient proof of the allegation of the corporate existence of H. P. Wasson and Company. *Palmer v. State* (1926), 197 Ind. 625, 150 N. E. 917, *Norton v. State* (1881), 74 Ind. 337.

Appellant also claims error in that he was indicted and convicted of the violation of the Offenses Against Property Act whereas the only proof of the commission of a crime is the unlawful use of a credit card, which would be a violation of Section 10-2131, Burns' Indiana Statutes Annotated. This section provides a penalty for the separate offense of the unauthorized use of the credit card. When a person commits acts which constitute the violation of more than one criminal statute, the State has the option to charge and prosecute under any or all of the statutes which have been violated.

It is sufficient if the indictment or affidavit charges and the evidence proves an offense under the statute. This Court has previously stated:

". . . It is sufficient if the indictment or affidavit charges and the evidence proves an offense under a statute, even though the charge might have been brought under a different statute providing a lesser penalty." *Durett v. State* (1966), 247 Ind. 692, 697, 9 Ind. Dec. 111, 219 N.E.2d 814.

This same proposition of law was followed in *Taylor v. State* (1968), 251 Ind. 236, 14 Ind. Dec. 303, 236 N. E. 2d 825.

We find no reversible error in this record. The trial court is, therefore, in all things affirmed.

DeBruler, C. J., Arterburn and Hunter, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 251 N. E. 2d 116.