Roy X. **RODDY**, Appellant (Defendant Below),

v.

**STATE of Indiana**, Appellee (Plaintiff Below).

No. 3-378A75.

Court of Appeals of Indiana, Third District.

Sept. 20, 1979.

Rehearing Denied Oct. 31, 1979.

---

Charles F. Marlowe, Hammond, for appellant.

Theodore L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Roy X. Roddy guilty of the Commission or Attempted Commission of a Felony While Armed with a Deadly Weapon.[1] He was sentenced to the Indiana Department of Corrections for a period of not less than ten (10) years. In his appeal to this Court, Roddy raises the following issues:

(1) Whether the evidence is sufficient to support his conviction?

(2) Whether the trial court erred in its refusal to instruct the jury on various lesser offenses?

We affirm.

## I.

### Sufficiency of the Evidence

Roddy challenges his conviction on the basis that the evidence was insufficient to prove two elements of the crime charged. He contends that the evidence does not establish: 1) that he took or attempted to take an article of value from another person; and 2) that he was at least sixteen years of age at the time the offense was committed. IC 1971, 35–12–1–1, Ind.Ann. Stat. § 10–4709 (Burns Code Ed.)[2], which defines the offense with which Roddy was charged, provides that the statute is applicable only to those persons who have attained the age of sixteen years. Robbery, the felony which underlies Roddy's conviction, requires the taking of an article of value from another through the use of fear or violence. IC 1971, 35–13–4–6, Ind.Ann. Stat. § 10–4101 (Burns Code Ed.).[3]

■ When the sufficiency of the evidence is raised as an issue on appeal, this Court will examine only the evidence most favorable to the State, together with the reasonable inferences to be drawn therefrom. If, from that viewpoint, there is sufficient evidence of probative value to support the jury's verdict, we will not set the conviction aside. *Henderson v. State* (1976), 264 Ind. 334, 335, 343 N.E.2d 776, 777.

■ The evidence most favorable to the State regarding whether Roddy took or attempted to take an article of value from another is as follows. William T. Hall, Jr., a gas station attendant at "J. and J. Shell" service station in Gary, Indiana, testified that at 12:45 a. m. on April 9, 1977, two men in a red Toyota drove into the gas station. According to Hall, after he had filled their tank with gas and collected the purchase price, the driver pulled a shotgun from the car, pointed it at Hall, and said it was "a stick up." Hall retreated to the confines of the garage, where he locked himself behind a steel door. The men then fled the premises without taking anything from the station. Hall, who stated that the incident placed him in fear for his life, testified that he was able to see the man's face in the well-lighted area adjacent to the gasoline pumps. Based on this observation, Hall made an in-court identification of Roddy as the man who had held the shotgun and announced the "stick up".

Roddy argues that this evidence is insufficient to establish that he took or attempted to take an article of value from another. We disagree. Based on the testimony of Hall that Roddy pointed a shotgun at him and announced that a "stick up" was in progress, the jury could have concluded beyond a reasonable doubt that Roddy did attempt to take an article of value from another person and that Roddy's conduct caused Hall to fear for his personal safety. *George v. State* (1969), 252 Ind. 344, 346, 247 N.E.2d 823, 824; *Asocar v. State* (1969), 252 Ind. 326, 330, 247 N.E.2d 679, 681.

■ Roddy has not followed the procedure that was necessary to preserve for

---

1. The offense with which Roddy was charged was committed on April 9, 1977, prior to the effective date (October 1, 1977) of Acts 1976, P.L. 148 § 24, which repealed the statute under which Roddy was charged—IC 1971, 35–12–1–1, Ind.Ann.Stat. § 4709 (Burns Code Ed.). "Deadly Weapon" is defined in the new Penal Code in Ind.Code Ann. § 35–41–1–2 (West 1978), but the use of a deadly weapon in the commission or attempted commission of a felony is, under the new Penal Code, treated within the confines of the particular statute which defines the felony involved.

2. Repealed effective October 1, 1977.

3. Repealed effective October 1, 1977.

appellate review the question whether he had attained the age required for a conviction of the crime charged. Notwithstanding the fact that the age requirement of sixteen years is a statutory element of IC 1971, 35–12–1–1, *supra*, an accused is presumed to have attained the age necessary for a conviction of a crime unless the presumption is challenged through a Motion to Dismiss and supporting memorandum.[4] *McGowan v. State* (1977), Ind., 366 N.E.2d 1164, 1165, *rev'g* Ind.App., 355 N.E.2d 276 (1976). Our search of the record reveals that Roddy neither filed a Motion to Dismiss nor otherwise objected to the presumption that he was at least sixteen years old. While Roddy has thus waived his right to assert this contention, we note at the same time that Police Officer Robert Heighsmith testified without objection that Roddy, in the course of an investigatory interview, stated that his age was twenty-four (24) years. Roddy's contention is wholly without merit.

## II.

### Lesser Included Offenses

The trial court refused Roddy's tendered instructions and forms of verdicts regarding the lesser offenses of: (1) Assault (IC 1971, 35–13–4–7 Ind.Ann.Stat. § 10–402 (Burns Code Ed.)); (2) Assault with Intent to Commit a Felony (IC 1971, 35–1–54–3 Ind.Ann. Stat. § 10–401 (Burns Code Ed.)); and (3) Aiming a Weapon at Another (IC 1971, 35–1–79–5 Ind.Ann.Stat. § 10–4708 (Burns Code Ed.)).[5] Roddy contends that the trial court's refusal to submit these instructions and concomitant forms of verdicts to the jury constitutes reversible error.

Roddy's contentions are predicated upon IC 1971, 35–1–39–2 Ind.Ann.Stat. § 9–1817

(Burns Code Ed.)[6], which defines the capacity of juries to find defendants guilty of lesser offenses which are included within the crime charged. The statute reads:

"One offense included in another.—In all other cases, the defendant may be found guilty of any offense, *the commission of which is necessarily included in that with which he is charged in the indictment or information.*" (Emphasis supplied.).

*Id.* The simplicity of the language employed in the statute belies the complexities involved in its application. Whether a particular lesser offense is "necessarily included" within a charged crime is a question which has troubled courts since the inception of the statute in 1905. *See, e. g., Carter v. State* (1972), 155 Ind.App. 10, 291 N.E.2d 109 (Sullivan and White, JJ., concurring with opinions).

The statutory provision that the lesser offense must be "necessarily included in that [offense] with which he is charged in the indictment or information" has indirectly caused much of the difficulty in applying the statute. *Id.* This statutory provision mandates that the determination of whether a lesser offense is a necessarily included offense depends not merely on the legal definitions of the greater and lesser offenses, *but also on the allegations of fact contained in the charging instrument.* *Lawrence v. State* (1978), Ind., 375 N.E.2d 208, 212; *Hash v. State* (1972), 258 Ind. 692, 696–97, 284 N.E.2d 770, 773; *Sullivan v. State* (1957), 236 Ind. 446, 451, 139 N.E.2d 893, 895; *House v. State* (1917), 186 Ind. 593, 596, 117 N.E. 647, 648. Its application has been a case-by-case development of the law. This piecemeal approach to a techni-

---

**4.** Once the defendant has filed a Motion to Dismiss on the basis that he or she has not satisfied the age requirement, the State is then required to prove beyond a reasonable doubt that the accused has attained the age necessary for a conviction of the crime charged. The rule requiring the defendant to file a Motion to Dismiss is predicated on the remote relationship between an accused's age and the acts which constitute the offense, the unique and peculiar nature of proof involved (similar to proof of gender), and the fact that the State has

no authority to prosecute a defendant who has not attained the age required for a conviction of the offense charged. *McGowan v. State, supra.* The subject is treated in *Annot.*, 49 A.L.R.3d 526 (1973).

**5.** All three statutes were repealed effective October 1, 1977, by Acts 1976, P.L. 148 § 24.

**6.** Repealed effective October 1, 1977, by Acts 1976, P.L. 148 § 24.

cal and multi-faceted question of law, albeit necessary, has in turn precipitated a confusing body of case law, which, in some instances, has the appearance of inconsistency.[7] We here attempt to synthesize that case law and to explain the comprehensive methodology for the determination of when a defendant may properly be convicted of a lesser offense.

The foundation for our analysis was established in *Lawrence v. State* (1978), Ind., 375 N.E.2d 208. There, the Court, relying on its previous holdings in *Hash v. State* (1972), 258 Ind. 692, 284 N.E.2d 770 and *Watford v. State* (1957), 237 Ind. 10, 143 N.E.2d 405, emphasized that the resolution of the question whether a defendant can properly be found guilty of a lesser offense is determined by a two-step inquiry. *Lawrence v. State, supra,* at 212. The first step focuses solely on the allegations contained in the charging instrument, while the second step concerns the evidence presented at trial. Each step is applied independently of its counterpart to effectuate fundamental principles of criminal law. Consequently, *both steps of the inquiry must be satisfied in order for a defendant to properly be convicted of a lesser offense.*[8]

---

**7.** For example, while it was stated in *Sullivan v. State* (1957), 236 Ind. 446, 451, 139 N.E.2d 893, 895, that a court "must look to the wording of the offense charged in each case for a determination of what lesser offenses, if any, are included . . . ", numerous cases can be found wherein the Court summarily relied on precedent for its conclusion that a particular offense was included within the crime charged. *See, e. g., Hazlett v. State* (1951), 229 Ind. 577, 582, 99 N.E.2d 743, 744 (*relying on Hickey v. State* (1864)), 23 Ind. 21 for the proposition that a charge of Robbery includes a charge of Larceny); *Jarrett v. State* (1975), Ind.App., 333 N.E.2d 794, 795 (relying on *Jones v. State* (1888), 118 Ind. 39, 20 N.E. 634 for the proposition that a charge of Rape includes a charge of Assault and Battery.). We emphasize that the cited cases are not in fact contradictory. Rather, each merely represents the application of different facets of the methodology which must be employed to determine whether an offense is "necessarily included" within the crime charged. These different aspects of the methodology are discussed at footnote 10, *infra, and accompanying text.*

**8.** For purposes of clarity, we here capsulize the entire two-step methodology which is employed to determine whether a defendant can properly be convicted of a lesser offense:

I. STEP ONE

A. *Purpose:* To ascertain whether the lesser offense is "included" within the crime charged.

B. *Methodology:*

1) Examine the statutes which define the two offenses, together with the allegations of fact contained in the charging instrument.

2) Determine:

a) Whether every essential element of the lesser offense was allegedly committed during the course of the charged crime? *and*

b) Whether each essential element of the lesser offense constitutes an essential element of the greater offense, as it was allegedly committed? *and*

* c) Whether a conviction of the charged offense requires proof of an element additional to those which comprise the lesser offense?

* Effective October 1, 1977, an included offense may be comprised of *all* the elements which comprise the greater offense. *See* footnote 11, *infra.*

3) If:

a) All conditions are satisfied, subject the *included* offense to step two.

b) If any of the above conditions are not satisfied, the inquiry ends. A defendant could not be properly convicted of the lesser offense.

II. STEP TWO

A. *Purpose:* To insure that the instructions and form verdicts which are given to the jury conform to the evidence.

B. *Methodology:*

1) Examine the evidence which tends to prove or disprove the commission of the elements which comprise the charged and included offenses.

2) Determine:

a) Whether there is evidence of probative value to establish the defendant's commission of all elements of the included offense?
i) If not, no instruction and form of verdict on the included offense should be given. The inquiry ends.

ii) If so, subject the included offense to step 2(b) of the inquiry.

b) Whether the evidence reveals a "serious dispute" regarding the defendant's commission of the element(s) which distinguish the greater and lesser included offense?

i) If not, no instruction and form of verdict on the included offense should be given to the jury.

ii) If so, an instruction and form of verdict on the lesser included offense should be given to the jury.

## STEP ONE

### (A) *Purpose and Methodology*

The first step of the *Lawrence* inquiry is designed to ascertain whether the requirements of IC 1971, 35–1–39–2, *supra,* are satisfied; in other words, whether the lesser offense is "included" within the crime charged. Two fundamental principles of criminal law are at stake in the determination. An examination of these principles precipitates an understanding of the methodological nuances involved in the determination of whether a particular lesser offense is "included" within the crime charged.

■ First, it is well-established that due process requires that a defendant be given notice of the crime or crimes with which he or she is charged.[9] Absent sufficient notice that a particular offense is charged, a defendant cannot be convicted of that crime. Ind.Const. art. 1, § 13; *Blackburn v. State* (1973), 260 Ind. 5, 11, 291 N.E.2d 686, 690. As effectuated in the law of lesser included offenses, the principle operates to bar a conviction of a lesser offense unless the charging instrument alleges the commission of all essential elements of the lesser offense as part and parcel of the charged crime.

■ Equally well-settled is the rule that when a defendant allegedly commits an act which constitutes a violation of more than one criminal statute, absolute discretion is vested in the State to decide which statute(s) he or she will be charged with violating. *Adams v. State* (1974), 262 Ind. 220, 224, 314 N.E.2d 53, 56; *Von Hauger v. State* (1969), 252 Ind. 619, 623, 251 N.E.2d 116, 118. In particular cases, the State may, by the words it chooses to employ in the charging instrument, determine whether a lesser offense is "included" within the charged crime. Accordingly, under IC 1971, 35–1–39–2, *supra,*—"the defendant may be convicted"—the particular language used in the charging instrument reflects the State's decision to create or avoid the opportunity for the jury to convict the defendant of a lesser offense in lieu of the crime charged. That decision, a power vested exclusively in the State, must be executed by the courts in determining whether a defendant can properly be convicted of a lesser offense.

■ In order to effectuate these principles and to determine whether a lesser offense satisfies the statutory requirement that it be "necessarily included in that [offense] with which he [the defendant] is charged in the indictment or information", the trial court must examine the criminal statutes which define the greater and lesser offenses, together with the allegations of fact contained in the charging instrument. *Lawrence v. State, supra.* From this examination, the court determines whether a conviction of the greater offense, as it is charged in the indictment or information, requires proof of all essential elements of the lesser offense, plus an additional element which distinguishes the two offenses. *Id.* This abstraction can be broken into the following components:

(1) Whether every essential element of the lesser offense was allegedly committed during the course of the charged crime? *and*

(2) Whether each essential element of the lesser offense constitutes an essential element of the greater offense, as it was allegedly committed? *and*

(3) Whether a conviction of the charged offense requires proof of an element additional to those which comprise the lesser offense?[10]

When all of these conditions are satisfied, the lesser offense is a "necessarily included" one.

---

**9.** The notice requirement insures that the defendant will be provided with sufficient information to prepare his defense, and assures him that he will not twice be put in jeopardy for the same crime. *Blackburn v. State, supra.*

**10.** This latter element has been omitted in the revision of the Criminal Code which took effect October 1, 1977. Under that revision, a lesser included offense may be composed of *all* the same elements which comprise the charged crime. See footnote 11, *infra,* for the statutory definition of "included offense" enacted in the revision.

Our three-component definition of a "necessarily included" offense represents a modification in form of that definition repeatedly quoted by the courts of this state:

"'* * * to be necessarily included in the greater offense, the lesser offense must be such that it is impossible to commit the greater without first having committed the lesser. . . .'"

*Hash v. State* (1972), 258 Ind. 692, 696, 284 N.E.2d 770, 773, *quoting Hobbs v. State* (1969), 253 Ind. 195, 199, 252 N.E.2d 498, 500, *reaffirming Watford v. State* (1957), 237 Ind. 10, 15, 143 N.E.2d 405, 407, *quoting House v. State* (1917), 186 Ind. 593, 595–96, 117 N.E. 647, 648. Despite the venerable nature of this definition, it is our conclusion that it tends to obfuscate not only the manner by which courts determine whether a lesser offense is an included one, but also the conceptual nature of that process.

Much of the confusion surrounding the law of lesser included offenses has been engendered by the terminology employed by the courts. The seed of this confusion was sown by the legislature in 1905 when, in enacting IC 1971, 35–1–39–2, *supra,* the legislature modified the term "included [offense]" with the adverb "necessarily".[11] In 1917, when confronted with the first impression question of defining the statutory phrase "necessarily included", the Court in *House v. State, supra,* effectuated the import of the term "necessarily" by stating that a "necessarily included" offense exists

only when "it is *impossible* to commit the greater without first committing the lesser." (Emphasis added.). Notwithstanding the statutory phrase "necessarily included" and its long-standing common law definition, however, the apparently anomalous concept of the "*possibly* included" lesser offense crept into Indiana case law. *See, e. g., Allison v. State* (1973), 157 Ind.App. 277, 279, 299 N.E.2d 618, 620. This incongruous juxtaposition of terms—"necessarily", "impossible", and "possibly"—has contributed to the perplexing nature of the case law on the subject of lesser included offenses.[12]

We emphasize, however, that behind the contradictory nature of the terms employed by the courts lies harmonious substantive determinations. The recognition of the "possibly included" lesser offense was not a deviation from the well-established common law definition of a "necessarily included" offense, but rather merely a reflection of the long-recognized fact that included offenses come in two varieties. The two types of "necessarily included" offenses can be most aptly characterized as the "inherently included" and "possibly included." These appellations best allude to the manner by which the courts of this state have, since the inception of the statute in 1905, determined whether a particular lesser offense was included within the crime charged.

---

**11.** The term "necessarily" has been omitted in the revision of the Criminal Code which took effect October 1, 1977. There, "included offense" is defined in Ind.Code Ann. § 35–41–1–2 (West 1978):

"'*Included offense*' means an offense that:
"(1) *is established by proof of the same material elements* or less than all the material elements required to establish the commission of the offense charged;
"(2) consists of an attempt to commit the *offense charged or an offense otherwise included therein;* or
"(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission." (Emphasis added.).
We note that this definition does not require that the lesser offense be composed of fewer

elements than the offense charged, as was required prior to the revision. *Watford v. State, supra,* 143 N.E.2d at 407.

**12.** Furthermore, the definition suggests that an "included" offense is always committed during the crime charged. However, a charging instrument may be drafted so carelessly by the State that it alleges the commission of all essential elements of the lesser offense, even though the defendant has not in fact committed all elements of that offense. In the *instant* case, for example, Roddy allegedly committed an assault during the commission of the charged offense; the evidence, however, does not support that allegation. *See* footnote 26, *supra.* In such cases, step two of the *Lawrence* inquiry precludes the trial court from instructing the jury on that included offense.

What we have characterized as the "inherently included" lesser offense exists when, by virtue of the legal definitions of the two offenses, it is impossible to commit the greater offense without first committing the lesser. For example, it is axiomatic that the commission of Rape requires a simultaneous commission of Assault and Battery. *West v. State* (1950), 228 Ind. 431, 439, 92 N.E.2d 852, 856. This is so because the elements which comprise the lesser offense of Assault and Battery—(1) the rude, insolent, or angry (2) touching (3) of another—are necessarily committed during the intercourse necessary to the commission of Rape, the greater offense. The courts have recognized that when the commission of a lesser offense is inherent to the crime charged, there is no need to examine the allegations of fact contained in the charging instrument. To do so would amount to an exercise in redundancy, for in such instances, the commission of the greater offense without the simultaneous commission of the lesser offense is a legal impossibility. In those cases, Courts have thus relied summarily on case precedent to support the conclusion that the lesser "inherently included" offense is one "necessarily included" within the crime charged.[13] *See, e. g., West v. State, supra; Hitch v. State* (1971), 259 Ind. 1, 15, 284 N.E.2d 783, 791 (A charge of Robbery includes a charge of Theft.).

Inherently included offenses, by their nature, square neatly with the long-standing definition of the "necessarily included" offense: that it must be "impossible to commit the greater without first committing the former." *House v. State, supra.* As a consequence, Courts have tended to equate the phrase "necessarily included" exclusively with those lesser offenses which are "inherently included."[14] *See, e. g., Padgett v. State* (1978), Ind.App., 380 N.E.2d 96, 99; *Halligan v. State* (1978), Ind.App., 375 N.E.2d 1151, 1156–1157. The statutory phrase "necessarily included" also embraces, however, the "possibly included" lesser offense which is alleged to have been committed during the course of the crime charged.

The "possibly included" lesser offense, as its name indicates, may or may not be an offense for which the defendant could properly be convicted. Whether a "possibly included" lesser offense is in fact a "necessarily included" one is dependent upon the manner and means allegedly employed in the commission of the charged crime. The determination thus requires the trial court to examine the factual allegations contained in the charging instrument.

The concept of the "possibly included" lesser offense is illustrated by an examination of *Allison v. State* (1973), 157 Ind.App. 277, 279, 299 N.E.2d 618, 620. In *Allison,* the defendant was tried without the intervention of a jury for a charge of Assault and Battery with Intent to Commit Murder. The trial court found him guilty of Aggravated Assault and Battery, a lesser offense. On appeal, defendant Allison was granted a new trial on the basis that Aggravated Assault and Battery was not an included offense of the crime charged. *Id.* at 622. In reaching its decision, the Court first noted that the commission of Assault and Battery with Intent to Commit Murder did not necessarily (inherently) require the simultaneous commission of Aggravated Assault and Battery; the *intent* to murder did not require the actual infliction of "grave bodi-

---

**13.** Notwithstanding the general rule that whether a particular lesser offense is an included one rests on a case-by-case determination, this represents one instance in the methodology where precedent properly plays a role. For an example of another such instance, see *fn. 15, infra, and accompanying text.*

Of course, the rule that the court need not resort to an examination of the factual allegations contained in the charging instrument assumes that the allegations are sufficient to establish the essential elements of the crime charged.

**14.** As noted in *fn.* 11, *supra,* the adverb "necessarily" has been omitted in the Criminal Code revision which took effect October 1, 1977. Thus, in cases decided under the new Penal Code, the designation "necessarily included" could serve as the exclusive reference to those included offenses inherently committed during the commission of the charged crime. The appellation "possibly included" has continued validity under the revised Criminal Code.

ly harm" or "disfigurement", an element of the lesser offense. Writing for the majority, Judge Sullivan then observed:

"However, it is *possible* for aggravated assault and battery to be a lesser included offense *if* the element of 'great bodily harm' *or* 'disfigurement' is properly alleged in the charging affidavit. *See Carter v. State, supra.* . . . "

*Id.* Cognizant that the lesser offense could possibly be committed during the commission of the charged crime, the Court in *Allison* then proceeded to examine the allegations of fact contained in the charging instrument. There, it found no allegation that Allison's victim had suffered "grave bodily harm" or "disfigurement." [15] The Court accordingly reversed Allison's conviction for Aggravated Assault and Battery, since that lesser offense was not included within the crime charged as it was allegedly committed in the charging instrument. Allison could not be convicted of a crime not charged, *notwithstanding the fact that the evidence clearly revealed that the victim had suffered such bodily injury.*[16]

▮ In summary, the determination of whether a particular lesser offense is "included" within the charged crime is, as a general rule, to be made on a case-by-case basis; the trial court examines the criminal statutes which define the greater and lesser offense, together with allegations of fact contained in the charging instrument. When, however, by virtue of the legal definitions of the two offenses, the commission of the lesser offense is inherent to the commission of the charged crime, there is no need to examine the particular factual allegations made in the indictment or information. When the commission of the lesser offense is not inherent to the crime charged, however, the trial court must examine the charging instrument to determine if the elements of the lesser offense, by virtue of the manner and means allegedly employed in the commission of the charged crime, are alleged to have been committed. This requirement effectuates the determination of whether lesser offenses which are possibly included in the crime charged are in fact alleged to have been committed.

If, from this examination, the court determines that proof of those elements which comprise the lesser offense is not required for a conviction of the crime charged, the lesser offense is not "included" within the crime charged—and an instruction and form of verdict on the lesser offense should

**15.** It should be noted that in ascertaining whether the allegations made in the charging instrument establish the commission of the essential elements of the lesser offense, the definition and import of words oftentimes plays a determinative role. For example, in *Allison,* the Court first defined the statutory terms "grave bodily harm" and "disfigurement". Implicitly recognizing the well-settled rule that an offense need not be charged in the exact terms of the statute defining the offense (*McCormick v. State* (1954), 233 Ind. 281, 285, 119 N.E.2d 5, 7), the Court focused its attention on whether the allegations that Allison did "feloniously . . . touch, beat, and strike" his victim were sufficient to charge that he had inflicted "grave bodily harm" or "disfigurement" on his victim. Distinguishing various case precedent, the Court concluded that the words were insufficient to charge the crime of Aggravated Assault and Battery. *Allison v. State, supra,* 299 N.E.2d at 622.

The reliance on case precedent to determine the import of ultimate facts which are alleged in the charging instrument, or to determine the definition of a statutory term, explains one confusing aspect of the case law on the subject of lesser included offenses. For while the general rule is that the determination of "included" offenses must be made on a case-by-case basis, particular nuances in the methodology, such as definitions of terms, justify the use of case precedent. For another instance where such reliance is justified, see footnote 13, *supra, and accompanying text.*

**16.** The victim had suffered a knife wound to the neck which required thirty-six stitches. The reversal of Allison's conviction despite this evidence emphasizes the due process principle underlying step one of the *Lawrence* inquiry: the defendant must be provided with notice of the charges pending against him or her in order to prepare to meet those allegations. *Blackburn v. State* (1973), 260 Ind. 5, 11, 291 N.E.2d 686, 690. While the evidence presented at trial plays a role in the determination of whether a defendant can be properly convicted of a lesser included offense (See step two of the *Lawrence* inquiry, *infra*), only the charging instrument determines whether a lesser offense is an "included" one.

not be given to the jury. If, however, the trial court concludes that the lesser offense is included within the charged offense, it must then subject the lesser included offense to the second step of the *Lawrence* inquiry to determine if the jury should be instructed on that offense. *Lawrence v. State, supra,* at 212. For purposes of clarity, our discussion of the methodology utilized in that step is deferred so that we might here analyze Roddy's contentions in light of the first step of the *Lawrence* inquiry.

### B. *Application*

 Roddy was charged by information with the Commission or Attempted Commission of a Felony (Robbery) while Armed with a Deadly Weapon. The charging instrument contained the following allegations:

"[O]n or about the 9th day of April, A.D. 1977, at and in the County of LAKE, and State of Indiana, ROY X. RODDY did then and there *unlawfully forcibly and feloniously take, or attempt to take* from the person of one WILLIAM THOMAS HALL, JR., *by violence or by putting him,* the said WILLIAM THOMAS HALL, JR. *in fear,* certain articles of value, then and there the personal property of the said WILLIAM THOMAS HALL, JR., and that the said ROY X. RODDY was then and there over the age of sixteen (16) years, and while he, the said ROY X. RODDY was then and there armed with a deadly or dangerous weapon, to-wit: a shotgun. . . . " (Emphasis added).

The crime with which Roddy was charged, as defined in IC 1971, 35–12–1–1, *supra,*[17] consists of those elements which are appar-

ent from its title, plus the elements of Robbery,[18] the felony underlying the charge. The consolidation of elements reads:

"1) The commission or attempted commission of a felony;

"2) The elements of Robbery, the underlying felony:

"a) Use of violence or fear

"b) To take an article of value

"c) From another person;

"3) While armed with a deadly or dangerous weapon."

In conjunction with these allegations and elements of the crime charged, we must examine the elements of Assault, Assault with Intent to Commit a Felony, and Aiming a Weapon at Another to determine if those lesser offenses are "included" within the crime charged. In so proceeding, we note that none of the lesser offenses falls within that category of included offenses which we have previously described as the "inherently included" lesser offense.

#### 1) *Assault*

The offense of Assault,[19] which was the subject of one of Roddy's tendered instructions and forms of verdicts, consists of the following elements:

1) The present ability to commit a violent injury upon another person; and

2) An attempt to so injure another person.

IC 1971, 35–13–4–7, *supra.* Our examination of the elements which comprise the greater and lesser offenses, conducted in light of the allegations contained in the charging instrument, compels us to conclude that Assault was an included offense of the charged crime.

"Robbery—Physical injury inflicted in robbery or attempt.—Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery."

**19.** IC 1971, 35–13–4–7, *supra,* defines Assault as follows:

"Whoever, having the present ability to do so, attempts to commit a violent injury upon the person of another, is guilty of an assault . . . . ."

**17.** IC 1971, 35–12–1–1, *supra,* reads in relevant part:

"Commission of or attempt to commit crime while armed with deadly weapon.— Any person who being over sixteen [16] years of age, commits or attempts to commit any felony while armed with any dangerous or deadly weapon . . . shall be guilty of a separate felony . . . . ."

**18.** IC 1971, 35–13–4–6, *supra,* defines Robbery as follows:

Our conclusion is predicated on the general allegations of fact that Roddy "unlawfully, forcibly and feloniously" and "by violence" committed (or attempted to commit) the crime charged. These allegations of ultimate facts, when made in the charge of a greater offense, have been held sufficient to impart to a defendant the simultaneous commission of the elements which comprise the lesser offense of Assault. *Hazlett v. State* (1951), 229 Ind. 577, 584, 585, 99 N.E.2d 743, 745–746.[20] The use of violence constitutes one essential element of the crime charged, which, in addition, is comprised of other elements additional to those which compose the lesser offense. Accordingly, in Roddy's case, Assault was an included offense of the crime charged—the Commission or Attempted Commission of a Felony while Armed.

### 2) *Assault with Intent to Commit a Felony*

Similarly, we conclude that the lesser offense of Assault with Intent to Commit a Felony, the subject of the second of Roddy's tendered instructions and forms of verdicts, is an included offense of the crime charged against him. As defined in IC 1971, 35–1–54–3, *supra*,[21] the elements of that lesser offense are:

1) An assault
2) Upon another
3) With the intent to commit a felony.

As explained above, the charging instrument alleged that Roddy assaulted gas station attendant Hall as part and parcel of the charged crime. The allegations also indicate that Roddy intended to commit a felony; that conclusion is inferred from the related allegations he took or attempted to take articles of value from Hall by the use of violence or fear. *Gregory v. State* (1973), 259 Ind. 652, 656, 291 N.E.2d 67, 69. All essential elements of the lesser offense were thus allegedly committed. Those elements comprising the lesser offense are essential elements of the crime charged, as it is alleged to have been committed in the charging instrument. In addition, the greater offense contains an element additional to those which comprise the lesser offense—that the defendant be armed with a deadly or dangerous weapon.[22] Accordingly, Assault with Intent to Commit a Felony was, in Roddy's case, an included offense of the Commission or Attempted Commission of a Felony while Armed with a Deadly Weapon.

### 3) *Aiming a Weapon*

█ The third instruction and form of verdict tendered by Roddy concerned the offense of Aiming a Weapon at Another. As defined in IC 1971, 35–1–79–5, *supra*,[23] that offense consists of three elements:

20. The *Hazlett* decision was grounded on the well-settled principle that an offense need not be charged in the exact language of the statute which defines the offense. *See Noel v. State* (1973), 157 Ind.App. 338, 300 N.E.2d 132. In *Hazlett*, the Court found that the words "unlawfully, feloniously, and forceably [*sic*] and by violence" charged a Battery, included within which was the offense of Assault. While the *Hazlett* decision suggests that Assault is an inherently included offense of a Battery, that notion is challenged in *Halligan v. State* (1978), Ind.App., 375 N.E.2d 1151, 1156–1157. In *Halligan*, the Court emphasized that an allegation of violence is crucial to the determination of whether Assault is an included offense of Battery.

21. The statute defines Assault with Intent to Commit a Felony in the following manner:

"Whoever perpetrates an assault or assault and battery upon any human being with intent to commit any felony other than a feloni-

ous homicide shall, on conviction, be imprisoned in the state prison for not less than one [1] nor more than ten [10] years."

22. The charging instrument does not link the allegation that Roddy was armed with a shotgun to the allegation that "violence" was employed in the commission of the charged offense. If that connection was alleged, a conviction of the greater offense would not require proof beyond that necessary to a conviction of the lesser offense—and would hence not be an included offense, as that term is defined in the law in effect at the time Roddy's offense was committed. *House v. State* (1917), 186 Ind. 593, 596, 117 N.E. 647, 648. Effective October 1, 1977, a lesser offense may be included within a greater offense even though it is composed of the same number of elements. See *fn.* 11, *supra*.

23. The statute reads in relevant part:

"It shall be unlawful for any person over the age of ten [10] years, with or without

1) Aiming a firearm (loaded or empty)
2) At another
3) With intent

We find that this lesser offense was not included within the charged crime.

In the information, the State merely alleged generally that Roddy was "armed" with a shotgun, not specifically that he pointed the weapon at gas station attendant Hall. The term "armed" does not import a pointing of the weapon; rather, it simply alleges Roddy's possession of the shotgun at the scene of the crime charged.[24] Nor did the State link the allegation that Roddy was "armed" with the allegation that Roddy employed "violence" or "fear" in the commission of the greater offense. In sum, the allegations merely imply that Roddy *may* have pointed the gun at Hall, an implication insufficient to charge the commission of the lesser offense. As it was not alleged to have been committed, the lesser offense was not an "included" one. The trial court thus properly refused to instruct the jury on the offense of Aiming a Weapon, *notwithstanding the fact that the evidence clearly revealed that Roddy did aim the shotgun at Hall. Compare Allison v. State, supra.*

While Aiming a Weapon was not, in Roddy's case, an "included" offense, we have previously concluded that the lesser offenses of Assault and Assault with Intent to Commit a Felony were "included" within the charged crime, as it was allegedly committed. In order to determine whether instructions and forms of verdicts regarding those offenses should have been given to the jury, we must subject them to the second step of the *Lawrence* inquiry. We first examine the purpose and methodology of that step.

> malice, purposely to point or aim any pistol, gun, revolver or other firearm, either loaded or empty, at or toward any other person; and any person so offending shall be deemed guilty of an unlawful act . . . ."

24. While the term "armed" has not been judicially defined in Indiana, it is not a technical word and should be construed in its ordinary sense. *Froedge v. State* (1968), 249 Ind. 438, 444, 233 N.E.2d 631, 635–636. "Armed" de-

## STEP TWO

### A) *Purpose and Methodology*

 Step two of the *Lawrence* inquiry is designed to insure that the final instructions which are given to the jury conform to the issues and evidence before it. *Harris v. State* (1977), Ind., 366 N.E.2d 186, 188. To guard against a violation of this longstanding principle, the trial court examines that evidence which tends to prove or disprove the commission of the elements which compose the greater and lesser included offenses. Based on its examination, the trial court should instruct the jury on the lesser included offense only when it finds that there is "evidence of probative value from which the jury could properly find the defendant guilty of such lesser included offense." *Lawrence v. State, supra,* at 213, *quoting Hash v. State* (1972), 258 Ind. 692, 698, 284 N.E.2d 770, 774 (DeBruler, J., dissenting).

We note that a literal application of the above-quoted test would in most cases require trial courts to instruct the jury on lesser offenses which were found to be "included" within charged offenses. By definition, a lesser included offense is composed of elements which comprise a portion of the greater offense. Consequently, that evidence which the State presents in support of the charged offense will usually indicate the commission of those elements which constitute the lesser included offense.[25] For example, in a trial wherein the defendant faces a charge of Robbery, the evidence presented to establish the requisite "taking" will also establish the commission of Theft, an inherently included lesser offense. *Gregory v. State* (1973), 259 Ind. 652, 656,

scribes the state of being "equipped" or "furnished" with weapons. Webster's Seventh New Collegiate Dictionary, p. 48 (1970).

25. Even though the evidence may establish the commission of all elements of the offense charged, that evidence does not *necessarily* establish the commission of the lesser offense. This paradox is explained in footnote 27, *supra,* and accompanying text.

291 N.E.2d 67, 69; *Hitch v. State* (1971), 259 Ind. 1, 15, 284 N.E.2d 783, 791. *The test is not so simple, however.* A trial court should not give an instruction and form of verdict on a lesser included offense simply because the evidence indicates that the defendant committed the lesser offense in the process of the acts for which he or she was charged.

■ To be sure, the evidence must establish the commission of the elements which comprise the lesser included offense in order for an instruction and form of verdict on that offense to go to the jury. However, the major focus of the evidentiary test is not on the elements of the lesser offense, but rather on the element(s) which distinguish(es) the offense charged from the lesser included offense. If the evidence which indicates that the defendant did in fact commit the distinguishing element is uncontroverted, then the instruction on the lesser included offense should not be given to the jury. If, however, as the Court stated in *Lawrence*, evidence of probative value raises a "serious dispute" regarding whether the defendant in fact committed the distinguishing element(s), an instruction and form of verdict on the lesser included offense should be given to the jury. *Lawrence v. State, supra,* at 213.

We emphasize that the Supreme Court's use of the expression "serious dispute" was not intended to suggest that the standard for determining when a jury should be instructed on a lesser offense is an arbitrary one. If a trial court was permitted to accept or refuse a tendered instruction upon the basis of its subjective appraisal of the seriousness of a dispute, it would be empowered to intrude upon the exclusive province of the jury to determine the facts. Ind.Const. art. 1, § 19. The expression "serious dispute" merely serves as a catchphrase [26] for the more explicit test utilized by the Courts: *When there is any evidence of probative value, or a reasonable inference therefrom, that the defendant did not commit the distinguishing element(s), then the jury should be instructed on the lesser offense.*[27] *Hester v. State* (1974), 262 Ind.

**26.** In this respect, the expression "serious dispute" is analogous to the phrase "genuine issue" (of material fact) which, pursuant to Ind. Rules of Procedure, Trial Rule 56(C), a trial court employs when it rules upon a Motion for Summary Judgment. In either case, the court does not base its decision upon an evaluation of the relative merits of each party's evidence; it instead determines if there is any evidence—or a reasonable inference therefrom—to establish the existence of a factual controversy. If so, the matter is left for the jury to decide, as is required by art. 1, § 19 of the Indiana Constitution.

According to art. 1, § 19, the jury also enjoys the power to determine the law. The trial court's responsibility to properly instruct the jury regarding applicable offenses does not, however, impinge upon the jury's right to determine the law. *Hester v. State* (1974), 262 Ind. 284, 315 N.E.2d 351; *Cole v. State* (1922), 192 Ind. 29, 134 N.E. 867. As the Supreme Court stated in *Hester*:

" 'A jury might have power to stultify itself by returning a verdict contrary to what it knew to be the law * * *. But the court, when giving instructions, is not required to insult the jurors by a suggestion that they may do so.' " (Citations omitted.).

262 Ind. at 289, 315 N.E.2d at 354, *quoting Cole v. State, supra,* 134 N.E. at 870. In short, it is not the court's duty to "suggest to the jury that they may decide otherwise than according to the law." *Cole v. State, supra.*

**27.** Our research does not reveal a particular instance where a Court has employed this precise language in its analysis of whether an instruction on a lesser included offense was properly accepted or refused. Similar language appears in *Eby v. State* (1905), 165 Ind. 112, 74 N.E. 890, where the Supreme Court spoke generally of the trial court's duty to instruct the jury:

" 'It is the right of a party,' said this court in *Banks v. State* (1901), 157 Ind. [190] 203, 60 N.E. [1087] 1092, 'in either a civil or criminal prosecution to endeavor to maintain his theory of the case, and for that purpose he should be permitted to give to the jury any and all competent evidence which tends to support the same; and where any evidence has been introduced which tends to sustain such theory, it is also his right to have the jury fully advised upon the law in relation thereto by proper instructions.' "

Without expressly stating so, Indiana Courts have applied the standard to the refusal and acceptance of instructions on lesser included offenses, as the examples in the text illustrate. *See Hester v. State, infra; Hash v. State, infra;* and *Cole v. State, infra.*

As the Court in *Hash* noted, a dispute regarding the element(s) which distinguish(es) the

284, 315 N.E.2d 351 represents a typical application of the rule. In *Hester*, the defendant was charged with murder during the commission of a robbery. At trial, the defendant tendered an instruction concerning the lesser included offense of robbery, which was refused. The Supreme Court upheld this refusal, stating:

> "Under the evidence of this case, we think there was no error in refusing the defendant's tendered instruction . .
>
> "All of the State's evidence pointed to the guilt of the defendant as charged. In addition to the evidence previously related, a pistol was found hidden in the upholstery of the rear seat of the automobile where the defendant was arrested shortly after the robbery and slaying. The ballistics evidence was that two of the bullets found embedded in the deceased's body had been fired from that pistol. The only defense evidence was that of insanity, and the defendant's testimony was that he remembered nothing of the incident. There was, therefore, no evidence to which the included offense instruction was applicable. *Hash v. State* (1972), [258] Ind. [692], 284 N.E.2d 770; *Cole v. State* (1922), 192 Ind. 29, 134 N.E. 867. . . ."

262 Ind. at 288, 315 N.E.2d at 354. In those cases cited by the Court in *Hester*, trial courts' refusals of instructions were upheld on the basis that there was no evidence to controvert the state's proof that the defendant had committed the element(s) which

offense charged from the lesser and included offense may arise in two· ways: (1) When the distinguishing element is one requiring an overt act, the evidence may reveal a conflict regarding whether that act was committed. *See, e. g., Lawrence v. State, supra*; or (2) A dispute may arise when the distinguishing element involves a state of mind (e. g., intent) and the evidence does not reveal an uncontroverted overt act from which the jury could reasonably infer that the defendant's mental state was consonant with that required for the charged offense. *Hash v. State, supra*.

28. *Hash* represents a more intricate application of the rule. There, the defendant was charged with robbery (forcible taking from another) of a sum of money. At trial, the only evidence to

distinguished the greater and lesser offenses. *Hash v. State* (1972), 258 Ind. 692, 698, 284 N.E.2d 770, 774 ("a void as to any probative evidence . . . .");[28] *Cole v. State* (1922), 192 Ind. 29, 36, 134 N.E. 867, 869 ("there being no evidence whatsoever. . . .").

The test employed in step two of the *Lawrence* inquiry serves two significant purposes. First, it lessens the possibility of compromise verdicts between those jurors who believe the defendant guilty of the offense charged and those who believe him not guilty. *Lawrence v. State, supra*, at 213. It is axiomatic that if no dispute exists with regard to the elements which distinguish the greater offense from the lesser, the defendant is either guilty of the offense charged or not guilty of any offense. Second, the test effectuates a strict application of the long-standing principle that an instruction upon an issue should not be given to the jury unless there is evidence to support it. *Hash v. State, supra; Cole v. State* (1922), 192 Ind. 29, 36, 134 N.E. 867, 870. In other words, unless a serious dispute is raised regarding whether the defendant committed the distinguishing element(s), there is no indication that the defendant's culpability, if at all, is limited to the lesser offense. A jury verdict to the effect that the defendant was guilty only of the lesser offense would simply be inconsistent with the evidence—and hence, an improper instruction. *Hash v. State, supra; Sherwood v. State* (1961), 241 Ind. 215, 170 N.E.2d 656, 658.

controvert the state's proof that a robbery had occurred was the defendant's testimony that he had found the cash. The defendant tendered an instruction on theft (taking from another), which was refused. The Supreme Court upheld that refusal on the basis that an instruction on theft was inappropriate to the evidence. The Court reasoned that the jury, if it chose not to believe the defendant's version of the events, could not properly limit the defendant's culpability to theft, since the evidence that force was employed was uncontroverted. To instruct the jury on theft, the Court stated, would permit the jury to "speculate on a third factual situation upon which there was no evidence." *Hash v. State, supra*, at 773.

## B) *Application*

In our earlier treatment of Roddy's contention that the evidence was insufficient to support his conviction, we discussed only the evidence most favorable to the State, as per the appropriate scope of appellate review for that question. Roddy presented no evidence in his own behalf, nor did his cross-examination of the State's witnesses reveal contradictions or inconsistencies in their testimony concerning Roddy's commission of the essential elements of the charged offense. That evidence presented at the outset of this opinion thus forms the framework for our application of step two of the *Lawrence* inquiry.

Three elements distinguish the included offense of Assault from the charged offense of Committing or Attempting to Commit a Felony while Armed: (1) The taking or attempt to take (2) an article of value (3) from another. The evidence regarding Roddy's commission of these elements is undisputed. Gas station attendant Hall testified that Roddy pointed a shotgun at him and announced that "it was a stick up." The consummation of the "taking" was frustrated when Hall closeted himself behind a locked steel door. As there was no evidence to indicate that Roddy's acts were limited to the commission of an Assault, the included offense, the trial court properly refused to instruct the jury on that offense.

Even if the evidence did reveal a dispute concerning Roddy's commission of the distinguishing elements, however, a second basis supports the trial court's refusal to instruct the jury on that offense. *Notwithstanding the fact that the commission of an assault was alleged in the charging instrument, the evidence was insufficient as a matter of law to establish that the assault in fact occurred.*[29]

Although it was alleged in the charging instrument that Roddy employed "violence" in the commission of the charged offense, the evidence does not support that allegation. Rather, it merely indicates that Roddy pointed the shotgun at Hall. There was no evidence that the gun was loaded at the time of the pointing, or that the safety had been released. The absence of these circumstances would preclude a conviction for Assault. *Jarman v. State* (1977), Ind., 368 N.E.2d 1348, 1350, *rev'g* Ind.App., 363 N.E.2d 1084. In *Jarman*, the Court predicated its decision that pointing a firearm at another constituted an Assault on evidence which indicated that at the time of the pointing, the gun was loaded and the safety was released. Absent such evidence, the Court indicated that the "present ability" and "attempt" to do violent injury to another, requisites to the commission of Assault, would not be satisfied. *Id.* at 1350. Accordingly, while Roddy's use of "fear" satisfies an element necessary to a conviction of the charged crime, the acts constituting that offense did not involve the commission of an Assault.

Inasmuch as the evidence was insufficient as a matter of law to establish the commission of the offense of Assault, the trial court properly refused to instruct the jury on the included offense of Assault with Intent to Commit a Felony. The jury could not properly have found Roddy guilty of that crime, since the assault necessary for a conviction of that offense, albeit an included one, was not committed.

Affirmed.

29. In light of the long-standing common law definition that an included offense exists only when "it is impossible to commit the greater without first committing the lesser" (*House v. State, supra*), it appears paradoxical to find that Roddy was properly convicted of the offense charged without in fact committing an Assault. This apparent incongruity points up the misleading nature of the common law definition of "included offense". While the definition suggests that an included offense is always committed during the commission of the charged offense, that is not necessarily true.

The use of "violence" *or* "fear" are alternate methods by which the defendant can commit one element of Robbery, the felony underlying Roddy's charged crime. The State alleged that Roddy utilized both "violence" and "fear" in the commission of the charged offense. The allegation of violence established that Assault was an included offense. *See* footnote 20, *supra*. In fact, Roddy had only utilized fear. Consequently, Roddy was guilty of the offense charged even though he did not commit the lesser and included offense.

LOWDERMILK, J. (by designation), concurs.

GARRARD, P. J., concurs with opinion.

GARRARD, Presiding Judge, concurring.

I concur with part I and with Judge Staton's analysis as to when it is proper to give a lesser offense instruction.[1] I also concur in the analysis that the offense of aiming a weapon was not inherently included in the charged offense nor was it sufficiently charged by the language of the information to satisfy the requirements of *Blackburn v. State* (1973), 260 Ind. 5, 291 N.E.2d 686.

However, my reasons for finding no error in the court's refusal to instruct on assault or assault with intent to commit a felony differ from those of Judge Staton.

Unlike common law assault the statutory crime of assault requires the *attempt* to commit a violent injury upon the person of another. IC 35–13–4–7 (repealed). The statute applicable to assault with intent requires the commission of an assault or assault and battery. IC 35–1–54–3 (repealed).

Under the evidence presented at trial Roddy did not commit a battery nor did he actually *attempt* to commit a violent injury on anyone. Accordingly, pursuant to *Hash v. State* (1972), 258 Ind. 692, 284 N.E.2d 770, these instructions were properly refused.

---

1. An exception exists establishing voluntary manslaughter as a lesser offense in a charge of first or second degree murder despite the element of "sudden heat." *See Robinson v. State* (Ind.App.1974), 309 N.E.2d 833, *rev'd on other grounds*, 262 Ind. 463, 317 N.E.2d 850; *Holloway v. State* (1976), Ind.App., 352 N.E.2d 523.